**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL,<br>1331 G Street, NW, Suite 200<br>Washington, DC 20005<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>U.S. Department of Homeland Security<br>Privacy Office<br>Washington, D.C. 20528<br><br>and<br><br>U.S. IMMIGRATION & CUSTOMS<br>ENFORCEMENT<br>500 12th St SW<br>Washington, DC 20536,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF** |

**COMPLAINT**

1. Plaintiff American Immigration Council ("Plaintiff" or "Council") brings this action against Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. to compel the disclosure of records regarding ICE's response to the COVID-19 pandemic.

2. As the deadly virus spreads across the United States, the fate of immigrants held in ICE custody has become the subject of widespread concern. Individuals in immigration detention, like individuals in jail, prisons or other confined settings, are particularly vulnerable to

1

outbreaks of COVID-19 because they are not able to follow public health guidelines—like social distancing—to avoid the spread of COVID-19. This detained population also has historically been subject to poor medical care and limitations on access to counsel and family, factors that exacerbate current concerns about conditions and treatment in immigration facilities.

3. To date, ICE has shared only general guidance regarding its preparation for and response to the pandemic and limited data regarding the impact of COVID-19 on detained individuals. The full picture of what is happening in ICE facilities—where more than 32,000 individuals are detained—is largely unknown. As a result, there is an urgent need to better understand ICE's preparation for COVID-19 outbreaks and the agency's plans to test and treat individuals who contract the deadly virus. Plaintiff's FOIA request asks for Defendant ICE's criteria for granting the release of individuals at-risk for contracting the COVID 19 virus; information relating to medical screening, treatment, and housing of individuals who test positive for the virus and remain in ICE custody; communication and sanitization procedures within ICE detention facilities; and guidance provided to ICE staff and sub-contractors.

4. Agency records responsive to Plaintiff's request will provide attorneys— including *pro bono* attorneys who represent detained clients as part of Plaintiff's Immigrant Justice Campaign ("Justice Campaign") initiative—and advocates on the ground with up-to-date information about policies governing criteria for release, medical treatment, and communication access for those who remain detained. The records that Plaintiff seeks also are critical to advocacy efforts calling for adequate responses to the COVID 19 crisis as well as long-standing advocacy to improve medical care and access to counsel for detained individuals. Agency records will allow concerned stakeholders, including policymakers, to hold immigration agencies

accountable for their treatment of detained individuals during this rapidly evolving public health crisis.

5. Defendants appear to agree that the subject matter of the FOIA request is urgent. On April 8, 2020, Defendant DHS granted the Council's request to expedite its FOIA request. Since granting the request to expedite, however, the agencies have failed to comply with the statute and make records timely available to Plaintiff. Plaintiff and those who would benefit from the information it seeks—detained individuals, their families, attorneys, and the greater public—cannot wait.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) because the Council's principal place of business is in the District of Columbia.

8. The Council filed its FOIA request with Defendant ICE on April 3, 2018. ICE then referred the request to DHS and DHS granted the Council's request to expedite the request. Neither ICE nor DHS has made a determination on the request or produced responsive documents. The Council has exhausted its administrative remedies in connection with the requests. 5 U.S.C. § 552(a)(6)(C)(i).

## PARTIES

9. Plaintiff Council is a tax-exempt, not-for-profit educational and charitable organization under Section 501(c)(3) of the Internal Revenue Code. Its principal place of business is at 1331 G Street, NW, Suite 200, Washington, D.C. 20005. The Council was established to increase public understanding of immigration law and policy, advocate for the fair

and just administration of our immigration laws, protect the legal rights of noncitizens and citizens, and educate the public about the enduring contributions of America's immigrants. Through research and analysis, the Council has become a leading resource for policymakers and opinion makers at the national, state, and local levels who seek to understand the power and potential of immigration and to develop policies that are based on facts rather than myths. The Council seeks to hold the government accountable for unlawful conduct and restrictive interpretations of the law and for failing to ensure that the immigration laws are implemented and executed in a manner that comports with due process through the pursuit of transparency and impact litigation.

10. Defendant DHS is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f). DHS is responsible for enforcing federal immigration laws. Upon information and belief, DHS has possession and control over the records requested by the Council.

11. Defendant ICE is a component agency of DHS and an agency within the meaning of 5 U.S.C. § 552(f). It is the principal investigative arm of DHS and is charged with criminal and civil enforcement of the immigration laws. Enforcement and Removal Operations (ERO), one of the three primary branches of ICE operations, is responsible for detention, bond management and supervised release. Upon information and belief, ICE and its component branches such as ERO have possession and control over the records requested by the Council.

**STATEMENT OF FACTS**

12.  The COVID-19 virus has impacted every aspect of daily life. Since the World Health Organization (WHO) labeled the highly contagious disease a pandemic[1] in early March, it has quickly spread with devastating effect through cities and states across the nation.

13.  According to information released by the WHO, the highly contagious disease spreads from one person to another person by coughing, sneezing or speaking and the virus can live on surfaces for hours or days.[2]

14.  Those who contract the virus may not have any symptoms, but still may infect others. *Id*. Those who do suffer from symptoms of the virus can experience severe flu-like symptoms. Approximately one out of every five people who contracts COVID-19 will become very ill and eventually have difficulty breathing. *Id*. The disease not only damages the lungs. Lack of oxygen and inflammation also can damage other organs such as the kidneys, liver, heart, and brain.[3]

15.  The virus's impact can have deadly consequences for individuals of advanced age or with certain underlying health conditions such as respiratory complications, diabetes, and heart disease.[4] People of all ages, however, may become seriously ill. *Id*.

---

[1] Bill Chappell, *Coronavirus: COVID-19 Is Now Officially a Pandemic, WHO Says*, NPR, March 11, 2020, https://www.npr.org/sections/goatsandsoda/2020/03/11/814474930/coronavirus-covid-19-is-now-officially-a-pandemic-who-says.
[2] WORLD HEALTH ORGANIZATION, *Q&A on coronavirus (COVID-19)*, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last updated April 17, 2020).
[3] Kelly Servick, SCIENCE, *For Survivors of severe COVID-19, beating the virus is just the beginning*, April 8, 2020, https://www.sciencemag.org/news/2020/04/survivors-severe-covid-19-beating-virus-just-beginning.
[4] WORLD HEALTH ORGANIZATION, *Q&A on coronavirus (COVID-19)*, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last updated April 17, 2020).

16. According to reports, as of May 6, 2020, 73,549 deaths in the United States have been attributed to COVID-19.[5]

17. Experts, including the Centers for Disease Control ("CDC"), have noted that jails, prisons, and other confined settings are particularly susceptible to the spread of this highly contagious virus. The disease recently begun to sweep through immigration detention facilities. On April 20, 2020, ICE confirmed 220 detained individuals at 28 different detention facilities and 30 ICE employees at 9 different detention facilities had tested positive for COVID-19.[6] A little over a week later, on April 29, 2020, 425 individuals at 33 different detention facilities and 36 ICE employees at 12 different detention facilities had tested positive for COVID-19. *Id* (visited on April 29, 2020). On May 6, 2020, ICE confirmed 674 individuals at 38 different detention facilities and 39 ICE employees at 13 different detention facilities had tested positive for COVID-19. *Id* (visited on May 6, 2020). In the last three weeks, the number of detained individuals in ICE facilities who have tested positive for the virus has tripled.

18. There is mounting evidence that the rate of infection is even higher than ICE reports. Individuals who were recently detained and then deported tested positive for COVID-19 upon arrival in their home countries, indicating that the current number of individuals who have contracted COVID-19 likely is much greater than has been reported by ICE.[7]

---

[5] THE NEW YORK TIMES, *Coronavirus in the U.S.: Latest Map and Case Count*, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited May 7, 2020)

[6] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE Guidance on COVID-19; Confirmed Cases*, https://www.ice.gov/coronavirus (visited on April 20, 2020).

[7] Caitlin Dickerson and Kirk Semple, *U.S. Deported Thousands Amid Covid-19 Outbreak. Some Proved to Be Sick*, THE NEW YORK TIMES, April 18, 2020, https://www.nytimes.com/2020/04/18/us/deportations-coronavirus-guatemala.html.

19. Though ICE has provided some guidance regarding its preparation for COVID-19 and the treatment of detained individuals during the pandemic, it has released only scant information about specific steps it has taken to prepare and prevent the spread of the virus. For example, in a declaration filed in a recent lawsuit, Lindsay M. Vick, Deputy Assistant Director for Clinical Services and Medical Director of IHSC (ICE Health Service Corps), stated that ICE is following CDC guidance for testing but does not specify what guidance has been followed or what testing has taken place. Order Granting Pl.'s Mot. for Prelim. Inj., *Fraihat v. ICE,* No. 19-01546 (C.D. Cal. April 20, 2020) (citing declaration submitted by Vick). In addition, Vick stated ICE has instituted "applicable parts" of "a pandemic workforce protection plan," but does not provide details about what this plan requires. *Id*.

20. It is not clear, for those individuals who remain in ICE custody, what steps ICE is taking or can take—given the current configurations of detention facilities—to safely house symptomatic individuals. ICE publicly states only that "[detained individuals] who do not have fever or symptoms, but meet CDC criteria for epidemiologic risk, are housed separately in a single cell, or as a group, depending on available space."[8] ICE's ability or lack thereof to provide appropriate housing for individuals who are at risk is a critical piece of information not currently available to the public.

21. In addition, ICE has not shared data with the public that would provide an accurate and comprehensive picture of its attempts to stem the spread of COVID-19 and provide medical treatment to detained individuals. The public does not have access to data that would shed light, for example, on the number of medical housing rooms available in all ICE facilities,

---

[8] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE Guidance on COVID-19; Overview and FAQs*, https://www.ice.gov/coronavirus (visited on April 20, 2020).

the number of detained individuals who have been placed in solitary confinement for COVID-19-related reasons, and the number of individuals who have been transferred to an external hospital center or urgent care facility to treat COVID-19.

22.     ICE's guidance for release of detained individuals, to the extent it exists, also is unclear. ICE has publicly stated on its website that it has released over 900 individuals after evaluating their immigration history, criminal record, potential threat to public safety, flight risk, and national security concerns.[9] However, ICE provides no additional information about how these factors are considered in making determinations about release.

23.     Approximately 32,000 individuals are presently in ICE custody. COVID-19 poses a mortal threat to the health and safety of these detained individuals as well as the ICE employees working in the detention facilities and the U.S. public at large.

24.     In a recent, troubling report, medical experts projected three possible scenarios for how the spread of COVID 19 could unfold in immigration facilities.[10] In the most optimistic scenario, 72% of individuals in ICE custody will be infected on day 90, that is, by June 2, 2020 in accordance with the parameters of the study. *Id*. Moreover, "in the most optimistic scenario, coronavirus outbreaks among a minimum of 66 ICE facilities (59%) would overwhelm ICU beds within a 10-mile radius and outbreaks among a minimum of 9 ICE facilities (8%) would overwhelm local ICU beds within a 50-mile radius over a 90-day period, provided every ICU bed were made available for sick detainees." *Id*.

---

[9] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE Guidance on COVID-19; Overview and FAQs*; *Detention*, https://www.ice.gov/coronavirus (last visited May 6, 2020).

[10] Daniel Coombs and Michael Irvine, *Modeling COVID-19 and impacts on U.S. Immigration and Enforcement (ICE) detention facilities*, 2020, J. URBAN HEALTH *1, 1 (forthcoming Apr. 27, 2020), https://whistleblower.org/wp-content/uploads/2020/04/Irvine_JUH_ICE_COVID19_model.pdf.

25. Public concern is further heightened by well-documented critiques of Defendant ICE's lack of adequate oversight over the detention system it operates. This lack of oversight results in systemic deficient conditions of detention for individuals in ICE custody. Chief among these is ICE's failure to ensure adequate medical care for detained individuals, which has resulted in preventable deaths.

26. Without better understanding concrete steps ICE has taken and plans to take to address the spread of the virus, including limiting access to counsel and family, as well as data that provides an accurate and reliable picture of the pandemic's impact on the detained population, the level of danger to the health and safety of detained individuals remains largely unknown.

### *The Council's FOIA Request*

27. On March 19, 2020, the Council submitted a FOIA request to Defendant ICE seeking information about the agency's response to the COVID-19 pandemic. Exh. A

28. The request seeks protocols and guidance regarding medical screening; sanitization of facilities; detained individuals' ability to communicate with family members and counsel; plans for separately housing individuals who are at risk; and plans to release individuals, including the use of alternatives to detention. The request also asks for data, including the numbers of detained individuals who have been tested for the COVID-19 virus, the number that have tested positive, the number that have been placed in solitary confinement and the number that have been transferred to a hospital or urgent care facility. *Id*.

29. On April 6, 2020, FOIA Officer Catrina M. Pavlik-Keenan acknowledged receipt of the request and explained that ICE was referring the request to the Deputy Chief FOIA Officer for DHS, James Holzer. Exh. B.

30. On April 8, 2020, Officer Holzer responded to the FOIA request stating that DHS had received the request on April 7, 2020. DHS granted the Council's request for expedited treatment of the FOIA request and "conditionally" granted the Council's request for a fee waiver. Exh. C.

31. Upon a request for records, FOIA requires the agency to make a determination on a FOIA request, stating whether it will comply with the request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c). If unusual circumstances apply, then an agency may request, by written notice, an additional 10 working days to issue its determination. 5 U.S.C. § 552(a)(6)(B)(i). For requests that seek expedited treatment, an agency must make a determination within 10 business days. 5 U.S.C. § 552(a)(3)(E)(ii)(I).

32. FOIA requires each agency (1) to conduct a search reasonably calculated to uncover all responsive documents; and (2) to promptly make available such responsive records. 5 U.S.C. § 552(a)(3)(A), (C). Where a request has been granted expedited treatment, the agency must make records available as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii).

33. If an agency fails to comply with the time periods set forth in the statute, then the requester is "deemed to have exhausted his administrative remedies," and may seek judicial review. 5 U.S.C. § 552(a)(6)(C)(i); (E)(iii).

34. As of the date of this complaint — seven weeks after filing the request and more than twenty days business days after ICE and DHS acknowledged receipt of the FOIA request — Defendants still have not made a determination on Plaintiff's FOIA request or produced responsive records.

### COUNT I
### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Timely Respond

35. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

36. Plaintiff properly requested records within the possession, custody, and control of Defendants.

37. Defendants received Plaintiff's FOIA request and granted expedited treatment of the request.

38. Defendants are obligated under to make a determination on Plaintiff's FOIA requests. 5 U.S.C. § 552(a)(6)(A)(i). Plaintiff has a legal right to a timely response to the FOIA request and no legal basis exists for Defendants' failure to respond.

39. Defendants failure to timely respond to Plaintiff's FOIA request violates FOIA.

### COUNT 2
### Violation of FOIA, 5 U.S.C. § 552
### for Failure to Conduct an Adequate Search for Responsive Records

40. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

41. Plaintiff properly requested records within the possession, custody, and control of Defendants.

42. Defendants are agencies subject to FOIA and therefore must make reasonable efforts to search for requested records and to promptly make the requested records available. U.S.C. § 552(a)(3)(C).

43. Defendant's failure to conduct an adequate search for responsive records violates FOIA.

### COUNT 3
### Violation of FOIA, 5 U.S.C. § 552
### for Improper Withholding of Responsive Records

44. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

45. Plaintiff properly requested records within the possession, custody, and control of Defendants.

46. Defendants are agencies subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide a lawful reason for withholding any materials.

47. Defendants are required to make records "promptly available" to Plaintiff pursuant to U.S.C. § 552(a)(3)(A).

48. When Defendants granted Plaintiff's request for expedited processing, they were required to process the FOIA request "as soon as practicable." 5 U.S.C. 552(a)(6)(E)(ii)(I).

49. Defendants have failed to promptly process responsive agency records or make the records available "as soon as practicable."

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

(1) Order Defendants to conduct a reasonable search for records responsive to Plaintiff's FOIA request;

(2) Order Defendants to produce, within ten days of this Court's order, or by such other date as the Court deems appropriate, a determination on Plaintiff's FOIA request;

(3) Order Defendants to produce, within 30 days of this Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiff's FOIA requests and indexes of any responsive records withheld under claim of exemption;

(4) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

(5) Award Plaintiff reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E);

(6) Grant Plaintiff such other relief as the Court deems just and proper.


Dated: May 7, 2020                                                      Respectfully submitted,


*/s/ Emily Creighton*

Emily Creighton (Bar No. 1009922)
AMERICAN IMMIGRATION COUNCIL
1331 G Street, N.W., Suite 200
Washington, DC 20005
(202) 507-7514 (phone)
(202) 742-5619 (fax)
ecreighton@immcouncil.org

Claudia Valenzuela (Bar No. IL0056)
AMERICAN IMMIGRATION COUNCIL
1331 G Street, N.W., Suite 200
Washington, DC 20005
(202) 507-7540 (phone)
(202) 742-5619 (fax)
cvalenzuela@immcouncil.org

*Counsel for Plaintiff*