**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN IMMIGRATION COUNCIL,

      *Plaintiff,*

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY PRIVACY OFFICE; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

      *Defendants*.

Case No. 20-cv-01196-TFH

**PLAINTIFF'S REPLY TO DEFENDANTS'
RESPONSE IN OPPOSITION TO
PLAINTIFFS MOTION FOR A
PRELIMINARY INJUNCTION**

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Claudia Valenzuela (D.C. Bar No. IL0056)
Emily Creighton (D.C. Bar No: 1009922)
AMERICAN IMMIGRATION COUNCIL
1331 G St. NW, Suite 200
Washington, DC 20005
(202) 507-7540
(202) 742-5619 (fax)

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii-iii

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................1

A.    Plaintiff Has Demonstrated That it is Likely To Prevail On The Merits............................4

B.    Plaintiff Can Demonstrate Irreparable Harm ...................................................................8

C.    Plaintiff Has Demonstrated That the Balance Of Equities and the Public Interest Weigh
      In Favor of a Preliminary Injunction. ...............................................................................10

CONCLUSION........................................................................................................................11

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*ACLU v. Dep't of Defense,* 339 F.Supp.2d 501, 503 (S.D.N.Y.2004) ............................................. 4

*Aguilera v. FBI,* 941 F.Supp. 144, 152–53 (D.D.C.1996) ............................................................. 4

*American Oversight v. U.S. Department of State,* 414 F.Supp.3d 182, 184-85 (D.D.C. 2019)

.................................................................................................................................... *passim*

*Brown v. CBP,* No. 3:15-cv-01181-JD (N.D. Cal. Sept. 8, 2016) ................................................ 7

*Citizens for Responsibility and Ethics in Washington v. Federal Election Com'n,* 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*") .................................................................................. 1, 4, 6

*Cleaver v. Kelley,* 427 F.Supp. 80, 81–82 (D.D.C.1976) ............................................................. 4

*Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (1976) .................................................................. 8

*Electronic Privacy Information Center v. Dep't of Justice,* 416 F.Supp.2d 30, 35 (D.C.C. 2006) ("*EPIC I*") ....................................................................................................................... *passim*

*Electronic Privacy Information Center v. U.S. Dep't of Justice,* 15 F. Supp. 3d 32, 39 (D.D.C. 2014) ("*EPIC II*") ............................................................................................................... 3

*Electronic Privacy Information Center v. U.S. Department of Homeland Security,* 811 F. Supp. 2d 216, 233 (D.C. Cir. 2011) ........................................................................................... 6

*EPA v. Mink,* 410 U.S. 73, 80 (1973) ........................................................................................... 5

*Oglesby v. US. Dep't of Army,* 920 F.2d 57, 65 (D.C. Cir. 1990) ................................................. 8

*Protect Democracy Project, Inc. v. U.S. Department of Defense,* 263 F.Supp.3d 293, 299-300 (D.D.C. 2017) ...................................................................................................................... 9

*Washington Post v. Department of Homeland Sec.,* 459 F.Supp.2d 61 (2006) ....................... 2, 10

## Statutes

5 U.S.C. § 552(a)(3)(A) .......................................................................................................... 2, 4, 8

5 U.S.C. § 552(a)(6)(E)(iii) .......................................................................................................... 2, 4

Freedom of Information Act, Pub. L. No. 93-502, 88 Stat. 1561 (1974) ...................................... 5

**Other Authorities**

Christine Mehta, *Annual Report: FOIA Lawsuits Reach Record Highs in FY 2018*, The FOIA
Project (Nov. 12, 2018)................................................................................................................ 7

Department of Homeland Security, *2019 Freedom of Information Act Report to the Attorney
General of the United States and the Director of the Office of Government Information
Services  27 (Feb. 2020)* ............................................................................................................ 6

H.R. Rep. No. 93-876, March 5, 1974., reprinted (1974) U.S. Code Cong. & Ad. News 6267 .... 8

Hamed Aleaziz, *An Immigrant Man in ICE Custody Dies After Contracting the Coronavirus*,
BuzzFeed News (updated May 25, 2020)........................................................................... 3, 10

Letter to Acting Director Janean Ohin, Baltimore Field Office, U.S. Immigration and Customs
Enforcement from Senators Benjamin L. Cardin and Chris Van Hollen, May 22, 2020......... 10

*Ohio's First ICE Detainee Dies from COVID-19*, Columbus Free Press (May 13, 2020)....... 3, 10

Ryan Devereaux, *ICE Detainee Who Died of Suffered Horrifying Neglect*, The Intercept, May
24, 2020. ............................................................................................................................... 3, 10

U.S. Dep't of Homeland Sec., DHS FY 2021 Budget in Brief 2 (Feb. 8, 2020) ........................... 8

## INTRODUCTION

Plaintiff, American Immigration Council ("Council") has filed a motion for a preliminary injunction seeking the release of records responsive to its Freedom of Information Act ("FOIA") request, submitted to Defendant Immigration and Customs Enforcement (ICE) on March 19, 2020. The request encompasses records and data regarding Defendant ICE's response to the ongoing COVID-19 pandemic, which has already resulted in the deaths of three individuals in ICE custody to date. ICE transferred the request to Defendant Department of Homeland Security ("DHS") on April 7, 2020. On April 8, 2020, Defendant DHS granted Plaintiff's request expedited treatment. Despite the grant of expedited treatment – which under statute and case precedent entails the production of records within "days or weeks, not months or years," *Citizens for Responsibility and Ethics in Washington v. Federal Election Com'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*"). Defendants have failed to make a determination or produce responsive documents as required by the statute. Further, in their opposition to Plaintiff's motion for a preliminary injunction, Defendants maintain that they cannot estimate by when records will be produced, thereby undermining the clear mandate and intent of the FOIA statute. Plaintiff maintains its only recourse is to seek injunctive relief.

## ARGUMENT

### I.  Plaintiff Has Demonstrated Why Injunctive Relief Is Appropriate in This Case

Defendants contend that seeking a preliminary injunction is "a way to short circuit the litigation process." Defendant's Response in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Def. Opp.") at 8. According to Defendants, "FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation." Def. Opp. at 9. Yet Defendants themselves frankly admit that they will not adhere to the FOIA procedural framework. The record in this case reflects the agencies' failure to make a

determination within the statutory deadline and despite having now informed Plaintiff, and the Court, that they have gathered responsive documents, Defendants decline to adhere to a definitive timeframe for promptly producing records as the statute requires. 5 U.S.C. § 522(a)(3)(A); (6)(E)(iii). As a result, Plaintiff cannot expect "expedited" processing of its FOIA request, despite Defendants' grant of such treatment to Plaintiff's request. Dkt. 1, Exh. C. Plaintiff's request for injunctive relief is not meant to "short circuit the litigation process." Rather, it seeks to ensure at least some compliance with the FOIA statute.

Plaintiff does not dispute that injunctive relief is an extraordinary remedy and does not, contrary to Defendants' suggestion, invoke it lightly. However, in keeping with this Circuit's precedent and the statute, where the posture and nature of its FOIA request meet the requirements for invoking injunctive relief, the Court can properly exercise its equitable authority to issue such relief. *American Oversight v. U.S. Department of State,* 414 F.Supp.3d 182, 184-85 (D.D.C. 2019). Plaintiff's request implicates a matter of urgent concern and is narrowly tailored to the release of responsive documents – it does not seek the ultimate relief that the Court may grant through the course of litigation, given that Plaintiff anticipates that the agencies will invoke exemptions under the FOIA statute to withhold records, either partially or in full. Plaintiff may also need to dispute the adequacy of Defendants' search for records. *Washington Post v. Department of Homeland Sec*., 459 F.Supp.2d 61, 68 (D.D.C. 2006). Thus, if the Court grants Plaintiff's present motion for injunctive relief – the release of responsive records within 30 days of any order by the Court, or by a date the Court deems appropriate - it will not accord to Plaintiff the full relief it seeks in this action. *Washington Post v. Department of Homeland Sec*., 459 F.Supp.2d 61, 75.

It is difficult to contemplate a situation with graver circumstances than that of a global pandemic and how it is presently unfolding in immigration detention centers, where experts agree

the danger to life and health is heightened. Dkt. 6-2, Declaration of Emily Creighton in Support of

Plaintiff's Motion for a Preliminary Injunction ("Creighton Decl.") at ¶¶ 26, 31, 33. Against the

backdrop of this fast-moving and life-threatening health crisis is Defendant ICE's poor track record

regarding the provision of adequate medical care or access to counsel to individuals in its custody.

*Id*. at ¶¶ 23-24. The information Plaintiff seeks is critical to ongoing efforts to secure the release

of individuals in ICE custody, as well as for attorneys, family members, policy makers and the

public to engage in contemporaneous oversight regarding how Defendant ICE is responding to the

crisis and the welfare on detained individuals. *Id*. at ¶¶ 35-37. At the time that Plaintiff filed its

request for injunctive relief, one individual, Carlos Ernesto Escobar Mejia, had died from COVID

19 while in ICE custody. *Id*. at ¶32. Recent reporting calls into question whether Mr. Escobar

Mejia's death was preventable and why he was not released from ICE custody.[1] Since that time,

less than one month later, two more individuals in ICE custody have passed away from COVID

19.[2] Plaintiff's request for injunctive relief thus complies with the criteria considered in this circuit

for this extraordinary remedy in FOIA cases. *American Oversight v. U.S. Department of State,* 414

F.Supp.3d 182 at 185; *Electronic Privacy Information Center v. U.S. Dep't of Justice*, 15 F. Supp.

3d 32, 39 (D.D.C. 2014) ("*EPIC II*").

---

[1] Ryan Devereaux, *ICE Detainee Who Died of Suffered Horrifying Neglect*, The Intercept, May 24, 2020, https://theintercept.com/2020/05/24/ice-detention-coronavirus-death/.

[2] *Ohio's First ICE Detainee Dies from COVID-19*, Columbus Free Press (May 13, 2020), https://columbusfreepress.com/article/ohio's-first-ice-detainee-dies-covid-19; *see also* Hamed Aleaziz, *An Immigrant Man in ICE Custody Dies After Contracting the Coronavirus*, BuzzFeed News (updated May 25, 2020) https://www.buzzfeednews.com/article/hamedaleaziz/immigrant-ice-coronavirus-death

For these reasons, Plaintiff urges that its request for injunctive relief is appropriate and should be granted.

### A.  Plaintiff Has Demonstrated That it is Likely to Prevail on the Merits

Contrary to Defendants' contention, courts routinely consider injunctive relief in FOIA actions, and where warranted, grant such relief. *See American Oversight* at 185*; Electronic Privacy Information Center v. Dep't of Justice*, 416 F.Supp.2d 30, 35 (D.C.C. 2006) ("*EPIC I*") (citing *ACLU v. Dep't of Defense,* 339 F.Supp.2d 501, 503 (S.D.N.Y.2004) (granting preliminary injunction motion in FOIA case and requiring production within one month); *Aguilera v. FBI,* 941 F.Supp. 144, 152–53 (D.D.C.1996) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately one month); *Cleaver v. Kelley,* 427 F.Supp. 80, 81–82 (D.D.C.1976) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately twenty days).

Defendants appear to rely on the lack of a specified timeframe in the FOIA statute for the production of records to suggest that the timeframe for production can be essentially open-ended. Def. Opp. at 11-12. The statute does lay out parameters for the timing of production, however. As Defendants note, the statute requires that records be produced "promptly," or "as soon as practicable" in the case of requests granted expedited treatment. *Id*. at 12; 5 U.S.C. § 552(a)(3)(A); (6)(E)(iii). Defendants offer no concrete sense of how this language should be interpreted, stating only that production within 30 days of an order by this Court as Plaintiff requests "is not practicable in any sense of the word." Def. Opp. at 14. This generalized position ignores relevant precedent. This Circuit has previously interpreted "prompt" release of records, under 5 U.S.C. § 552(a)(3)(A), to encompass a concrete delineation, noting that this provision requires agencies to produce responsive records within "days or weeks, not months or years." *CREW v. Federal Election Com'n*,

711 F.3d 180 at 188. Requests granted expedited treatment, which must be processed "as soon as practicable," should, at minimum, be governed by a similar if not more expeditious timeframe for production. *EPIC I*, 416 F. Supp. 2d at 39.

In fact, "as soon as practicable" does not seem to bear much weight at all, where Defendants offer Plaintiff what they typically do in FOIA litigation–a production schedule limited to 500 pages per month to begin and conclude at an undefined period of time. Def. Opp., Attachment A, Declaration of James V.M.L. Holzer ("Holzer Decl.") ("For those reasons, at this time I am unable to estimate when the DHS Privacy Office will be able to complete the review of these 800 pages and produce the records to Plaintiff."). Unless the provisions of the FOIA statute contemplating timely responses are given effect, Defendants can practically abdicate their duty to timely produce responsive records under the statute, rendering its provisions meaningless. *EPIC I* at 37 ("DOJ's reading of the statute would give the agency unchecked power to drag its feet and 'pay lip service' to a requester's 'statutory and regulatory entitlement to expedition.'") (citations omitted). This serves to frustrate clear Congressional intent that the public access actionable, timely information about government operations. This is particularly the case when it comes to federal agencies resistant to scrutiny, as in the case of Defendants. *See EPA v. Mink*, 410 U.S. 73, 80 (1973), superseded by statute, Freedom of Information Act, Pub. L. No. 93-502, 88 Stat. 1561 (1974) (FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.").

Further, Defendants misapprehend the basis of Plaintiff's request to the Court for injunctive relief ordering production by a date certain. Plaintiff does not take the position that injunctive relief must issue based merely on an "automatic presumption" that the FOIA statute has been violated

where delay in processing a FOIA request exceeds one month. Def. Opp. at 12. This overstates what Plaintiff asks of the Court and confuses the query of a timely determination with actual production of records. *Id*. at 12-13. Plaintiff is cognizant that the D.C. Circuit has previously addressed the distinction between these two provisions of FOIA. *CREW* at 188. Plaintiff's request for injunctive relief is not based on agency failure to make a determination, nor does Plaintiff take the position that an agency's failure to make a determination automatically warrants injunctive relief. Plaintiff seeks here to effectuate production of responsive records, based on a multitude of factors which meet the required showing for injunctive relief.

Defendants' fundamental dispute with Plaintiff's request rests on a lack of agency resources and increased workload, based on increased FOIA requests over the past few fiscal years, now exacerbated by the COVID 19 pandemic. Def. Opp. at 13-14. As an initial matter, Plaintiff is certainly sympathetic to the impact of the COVID 19 crisis on agency staff. Plaintiff has encountered similar pressures as well. As Defendants note, however, delays in FOIA responses have been building for some time now – this is a reality that has existed prior to the COVID-19 pandemic and will no doubt continue to exist after the pandemic.[3]

DHS component agencies have long invoked a lack of agency staff and resources to explain delays in responding to FOIA requests. *See e.g.*, *Electronic Privacy Information Center v. U.S. Department of Homeland Security*, 811 F. Supp. 2d 216, 233 (D.C. Cir. 2011) (rejecting DHS'

---

[3] *See* Department of Homeland Security, *2019 Freedom of Information Act Report to the Attorney General of the United States and the Director of the Office of Government Information Services* 27 (Feb. 2020), https://www.dhs.gov/sites/default/files/publications/dhs_fy2019_foia_report_final_1.pdf (ICE reported 1,493 backlogged FOIA requests, i.e. requests outside of the statutory time period for a response, to ICE at the end of FY 2019); *id*. at 14 (noting that 59,123 FOIA requests referred to ICE from other agencies were not accounted for in the annual report); *id*. at 27 (reporting 1,379 backlogged requests to the DHS Privacy Office at the end of FY 2019).

argument that agency backlog contributed to "unavoidable delay" in responding to plaintiff's FOIA request). Notably, however, DHS agencies do marshal resources and staff to respond to FOIA requests in a timely manner, *even in periods where the agency is receiving high numbers of FOIA requests* and have recognized their statutory obligation to do so.[4]

Plaintiff does not mean to diminish the challenges for Defendants in responding to FOIA requests. Nonetheless, Defendants cannot shift the onus of delay onto Plaintiff, where the obligation to comply with the FOIA statute lies with them and further, where its own policies may contribute to the growth of its workload. Defendants note an increase in FOIA litigation. Holzer Decl. at ¶ 13. This increase appears to be tied to unprecedented, harsh immigration policies issued by these same agencies which have drawn heightened scrutiny.[5] Moreover, Defendants generally allude to guidance requiring "coordination" between DHS and Defendant ICE, its subcomponent, to respond to COVID 19 related FOIA queries. Holzer Decl. at ¶ 21; Def. Opp., Attachment B, Declaration of Toni Fuentes ("Fuentes Decl.") at ¶ 7. It is unclear to Plaintiff how this coordination complies with the statute or furthers efficiency, as it seems to add another layer of processing to FOIA request. In addition, Defendants are in the best position to anticipate that sudden crises, like the COVID-19 pandemic, will result in an uptick of FOIA

---

[4] *See* Settlement Agreement, *Brown v. CBP*, No. 3:15-cv-01181-JD (N.D. Cal. Sept. 8, 2016), https://www.americanimmigrationcouncil.org/sites/default/files/litigation_documents/brown_v_c bp_settlement_0.pdf. (referencing, in settlement agreement signed by CBP, the agency's receipt of high levels of FOIA requests in FY 2014, FY 2015, and FY 2016, but stating CBP had "implemented processes and devoted staff to ensure timely compliance with this level of FOIA requests" and indicating that CBP was "committed to continuing . . . efforts to timely process FOIA requests filed with Defendant CBP").

[5] Christine Mehta, *Annual Report: FOIA Lawsuits Reach Record Highs in FY 2018*, The FOIA Project (Nov. 12, 2018), http://foiaproject.org/2018/11/12/annual-report-foia-lawsuits-reach-record-highs-in-fy-2018/ (noting an increase in FOIA lawsuits against DHS agencies in light of the current administration's announcement of "controversial policies on a regular basis").

requests and allocate resources accordingly. DHS is a well-resourced federal agency with a budget of over 48 billion dollars.[6] Government transparency and the public's interest in the records sought through Plaintiffs' FOIA requests should thus not suffer because of the agencies' own policies or their failure to devote additional resources to meet any increased demand.

Timely responses to FOIA requests are integral to the purposes of FOIA. *See, e.g., Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (the purpose of FOIA is "to open agency action to the light of public scrutiny") (citation omitted); *Oglesby v. US. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) ("Congress adopted the time limit provision in the FOIA in order to 'contribute to the fuller and faster release of information, which is the basic objective of the Act.'" (quoting H.R. Rep. No. 93-876, March 5, 1974., reprinted (1974) U.S. Code Cong. & Ad. News 6267 at 6271). As Congress explained in enacting FOIA, "information is often useful only if it is timely. Thus, excessive delay by the agency in its response is often tantamount to denial." H. Rep. No. 876, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. Admin. News 6267 at 6271. Here, despite the understandable challenges presented by agency staff transitioning to remote work and an increase in FOIA requests related to the pandemic, Defendants have a responsibility to adhere to the law, particularly where lives are at stake.

### B. Plaintiff Can Demonstrate Irreparable Harm

To counter Plaintiff's contention of irreparable harm, Defendants hang their hat on the argument that injunctive relief seeking production by a date certain is only proper when there is an "impending deadline." Def. Opp. at 16. However, "urgency," which lies at the core of

---

[6] U.S. Dep't of Homeland Sec., DHS FY 2021 Budget in Brief 2 (Feb. 8, 2020), *available at* https://www.dhs.gov/publication/fy-2021-budget-brief.

expedited treatment, and which has been granted in Plaintiff's case, does not require so narrow a showing to warrant the Court's intervention. Providing the public with timely information so that the it can be effective in its response to troubling governmental operations is not – nor should it be – tied to a specific deadline. Courts have thus accordingly recognized that an "urgency to inform" encompasses fast-moving developments implicating federal agency operations that have consequential ramifications, without necessarily implicating a concrete deadline. *See American Oversight* at 186 (ongoing impeachment proceedings); *Protect Democracy Project, Inc. v. U.S. Department of Defense,* 263 F.Supp.3d 293, 299-300 (D.D.C. 2017) (ongoing missile strikes in Syria).

Defendants also downplay the urgency behind Plaintiff's goal of informing the public. Plaintiff certainly aims to publicly share any information it obtains pursuant to its present FOIA request with the aim of influencing ongoing public discourse – including policy – on ICE's response to the COVID 19 pandemic as with any FOIA request. However, this is not its sole purpose nor the motivating factor in invoking injunctive relief before the Court in this particular case. The "scrutiny" and need to address "information gaps" that Plaintiff seeks to achieve here is based on a health crisis of an unprecedented and fast-moving nature and how this crisis plays out in immigration detention centers – which Defendants' own agency officials concede is a "tinderbox" for the spread of the virus. Creighton Decl. at ¶ 31. Plaintiff anticipates that the information it seeks via this FOIA request will have a consequential impact on efforts to seek the release of vulnerable individuals in ICE custody, as well as provide real-time accountability regarding screening, treatment and housing of individuals who remain detained. *Id*. at ¶¶ 34-35. The urgency lies in the fact that this pandemic literally implicates a matter of life and death, which is not "speculative" given Defendant ICE's track record regarding safeguarding the health

9

and due process for individuals in its custody. *Id*. at ¶ 24. Three individuals have passed away

while in ICE custody within a span of weeks[7], a federal court has expressed concern about ICE's

release procedures, Creighton Decl. at ¶ 27, and members of Congress have called for more

information regarding Defendant ICE's response to the pandemic.[8] Nonetheless, according to

Defendants, there is no rush on production because the "COVID-19 pandemic continues, and

there is no reason to expect that the records AIC seeks will lose their value if they are processed

on the schedule DHS has set forth." Def. Opp. at 16. This statement ignores the reality that is

playing out on the ground in immigration detention centers, where three individuals have already

died from the virus, including at least one whose death may have been preventable.

It is for these reasons that Plaintiff asserts it faces irreparable harm if it does not timely

receive responsive records. Plaintiff does not, as Defendant states, seek to turn the "extraordinary

and drastic remedy" of a preliminary injunction…into a mundane tool of FOIA case

management." Def. Opp. at 16.  Rather, Plaintiff has invoked the Court's authority to grant

injunctive relief because of the tangible harm it faces in its pursuit of timely information.

### C.  Plaintiff Has Demonstrated That the Balance of Equities and the Public Interest Weigh In Favor of a Preliminary Injunction

Defendants maintain that issuing injunctive relief in this case would harm other requesters

and nonlitigants. Def. Opp. at 17. Plaintiff maintains that holding agencies to their obligation under

the FOIA statute furthers the public interest by ensuring an efficient system that works for all

requesters. *Washington Post* at 76; *EPIC I* at 42. The fundamental purpose of FOIA is to ensure

---

[7] *Supra*, n. 1, 2.

[8] Letter to Acting Director Janean Ohin, Baltimore Field Office, U.S. Immigration and Customs Enforcement from Senators Benjamin L. Cardin and Chris Van Hollen, May 22, 2020, available at https://www.cardin.senate.gov/imo/media/doc/MD%20Delegation%20Letter%20to%20DHS%20on%20COVID-19%20in%20Immigration%20Detention%20Centers%20-%20Senate.pdf.

that the public can access timely information about the activities of its government. The current scheme that Defendants have implemented for FOIA processing – a process that almost necessarily requires litigation for a timely response – cannot be said to effectuate agency obligations under the statute and serves only to undermine the public interest.

Defendants largely rely on the volume of FOIA requests that they need to process as a reason for the Court to give the agencies the benefit of the doubt in weighing the factors for injunctive relief. Plaintiff does not seek to undermine the agencies' workload. However, as noted, Defendants are in the best position to tackle and resource this workload. Given these considerations, any burden on Defendants here should not outweigh the benefit to the public in granting relief that effectuates the statute.

The Court should therefore find that the balance of equities and the public interest weigh in Plaintiff's favor.

## CONCLUSION

For the reasons outlined above, the Court should find that Plaintiff has established that it meets the criteria for injunctive relief. Plaintiff therefore respectfully asks the Court to order that Defendants ICE and DHS produce responsive records to its FOIA request within 30 days of any order by the Court, or by a date that the Court deems appropriate.


Dated: May 29, 2020                  Respectfully submitted,

                                     */s/ Claudia Valenzuela*
                                     Claudia Valenzuela (D.C. Bar No. IL0056)
                                     Emily Creighton (D.C. Bar No. 1009922)
                                     AMERICAN IMMIGRATION COUNCIL
                                     1331 G St. NW, Suite 200
                                     Washington, DC 20005
                                     (202) 507-7540/7514
                                     (202) 742-5619 (fax)
                                     cvalenzuela@immcouncil.org

11

ecreighton@immcouncil.org

*Attorneys for Plaintiff*

12