## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION COUNCIL,

                         **Plaintiff,**

    **v.**                                              **Civil Action No. 20-1196 (TFH)**

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*

                         **Defendants.**

## <u>MEMORANDUM OPINION</u>

This is a Freedom of Information Act ("FOIA") action in which Plaintiff American

Immigration Council ("AIC") seeks records from the U.S. Department of Homeland Security

("DHS") and U.S. Immigration and Customs Enforcement ("ICE") related to ICE's response to

the COVID-19 pandemic.  Plaintiff filed a Motion for Preliminary Injunction [ECF No. 6] on

May 12, 2020, which Defendants opposed.  The Court held two telephonic hearings on

Plaintiff's Motion, on June 2, 2020 and June 11, 2020, and as stated on the record at the

conclusion of the June 11, 2020 hearing, the Court granted Plaintiff's Motion.  The Court

ordered Defendants to process at least 400 pages of responsive records and release the non-

exempt documents to Plaintiff by July 31, 2020, and to process the remaining responsive records

and release all remaining non-exempt documents to Plaintiff by August 31, 2020.  *See* Order

[ECF No. 14].  This Memorandum Opinion provides further explanation for the Court's decision.

## BACKGROUND

Plaintiff is a nonprofit organization that "was established to increase public

understanding of immigration law and policy, advocate for the fair and just administration of

immigration laws, protect the legal rights of noncitizens and citizens, and educate the public about the enduring contributions of America's immigrants."  Compl. ¶ 9 [ECF No. 1].  Plaintiff submitted a FOIA request to ICE on March 19, 2020, seeking

> protocols and guidance regarding medical screening; sanitization of facilities; detained individuals' ability to communicate with family members and counsel; plans for separately housing individuals who are at risk; and plans to release individuals, including the use of alternatives to detention. The request also asks for data, including the numbers of detained individuals who have been tested for the COVID-19 virus, the number that have tested positive, the number that have been placed in solitary confinement and the number that have been transferred to a hospital or urgent care facility.

*Id.* ¶ 28; *see also* ECF No. 1-1.  ICE referred Plaintiffs' request to DHS on April 6, 2020.  *See* ECF No. 1-2.  DHS acknowledged the transfer of the FOIA request and notified Plaintiff that its request for expedited treatment had been approved via letter dated April 8, 2020.  *See* ECF No. 1-3.

Plaintiff filed this lawsuit on May 7, 2020.  On May 12, 2020, Plaintiff filed its Motion for Preliminary Injunction, requesting that the Court order Defendants to produce all non-exempt, responsive records within 30 days of the Court's order, "or by such date as the Court deems appropriate."  Pl.'s Mot. 1.  Defendants filed their Opposition [ECF No. 10] on May 26, 2020, and Plaintiff filed its Reply [ECF No. 11] on May 29, 2020.

ICE identified "approximately 800 pages of potentially responsive records" to Plaintiff's request.  Opp'n at 6; Decl. of Toni Fuentes ¶ 10 ("Fuentes Decl.") [ECF No. 10-2].[1]  With respect to processing, ICE represented that it would be able to forward the first 500 pages of records to DHS "for coordination" within 45 days and to forward the remaining documents within another 30 days.  Opp'n at 6; Fuentes Decl. ¶ 11.  Defendants explained that the DHS

---

[1]     Toni Fuentes is the Deputy Director of the ICE FOIA Office.  Fuentes Decl. ¶ 1.

Privacy Office would then be responsible for "reviewing those records for responsiveness, reviewing any withholding recommendations from ICE, processing those records, and ultimately issuing any releases on behalf of the Department."  Decl. of James V.M.L. Holzer ¶ 24 ("Holzer Decl.") [ECF No. 10-1].[2]

As of May 26, 2020, DHS was "unable to estimate" when it would be able to complete its review or production:

> Because of court-ordered deadlines, competing litigation priorities, and strained personnel resources resulting from loss of personnel and the impact of the COVID-19 pandemic, the FOIA Litigation Team is working at capacity and cannot commit to processing records for new litigation cases until it completes processing for several other cases, and begins processing records for several other cases that predate the instant litigation.

*Id.*  Plaintiff maintained that "its only recourse [wa]s to seek injunctive relief" due to the urgency of the request, asserting that its

> ability to obtain public records in a prompt manner is critical to ensuring [Plaintiff] can provide information to the public, including attorneys, advocates and policymakers, for the purpose of helping to secure the release of at-risk individuals, and understand the care, housing and access to counsel available to those who remain detained. The records [Plaintiff] seeks also provide important information to help ensure public accountability over ICE's response to the pandemic and protect the legal rights of detained individuals.  ICE's response to the COVID-19 crisis is a subject of great importance to the American public and a matter of life and death for detained immigrants.  [Plaintiff] has submitted its FOIA request designed to quickly obtain information about ICE's preparation for a COVID-19 outbreak – steps taken to prevent an outbreak and steps taken to treat individuals who have or will become infected with COVID-19.  This deadly highly-infectious disease has already begun to spread throughout ICE facilities and the number of infected detained individuals is rapidly growing.

Decl. of Emily Creighton ¶ 34 ("Creighton Decl.") [ECF No. 6-2].[3]

---

[2]    James V.M.L. Holzer is the Deputy Chief FOIA Officer for the DHS Privacy Office. Holzer Decl. ¶ 1.

[3]    Emily Creighton is the Legal Director, Transparency, at AIC.  Creighton Decl. ¶ 1.

As of May 31, 2020, ICE had reported 1,461 immigrant detainees with confirmed cases of COVID-19 and 44 confirmed cases of COVID-19 among ICE employees working in ICE detention facilities.[4]  Also as of May 31, 2020 there were 754 immigrant detainees who were in custody, had tested positive for COVID-19, and were under isolation or monitoring.  *Id.*  Two immigrant detainees had died of COVID-19 as of May 31, 2020.  *Id.*

## LEGAL STANDARD

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted).  A court may only grant the "extraordinary remedy . . . upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Specifically, a plaintiff must show that it is: (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).  Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Courts in the D.C. Circuit evaluate the four preliminary injunction factors on a "sliding scale" – if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp,* 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).  Accordingly, a plaintiff seeking preliminary injunctive relief "must make a 'clear showing that four factors, taken together,

---

[4]      *ICE Guidance on COVID-19,* U.S. Immigration and Customs Enforcement, *available at* https://www.ice.gov/coronavirus (last visited June 2, 2020).

warrant relief.'" *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)

(quoting *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)).

Where, as here, the preliminary injunction would be a mandatory one, the Court's power

to issue a preliminary injunction "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d

1168, 1173 (D.C. Cir. 1969).  A party seeking a mandatory preliminary injunction must "meet a

higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or

that extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy*

*Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

## ANALYSIS

Plaintiff seeks an order directing Defendants to process its expedited request and produce

responsive documents by a date certain.  Accordingly, Plaintiff must establish that the four

preliminary injunction factors support such relief.

**I.      Plaintiff Has Shown that It is Likely to Succeed on the Merits.**

FOIA directs agencies to process expedited requests "as soon as practicable," 5 U.S.C.

§ 552(a)(6)(E)(ii), and requires agencies to make a "determination" on a non-expedited FOIA

request within twenty working days of receipt, 5 U.S.C. § 552(a)(6)(A)(i).  *See Protect*

*Democracy*, 263 F. Supp. 3d at 302 ("Once FOIA's deadlines have passed, the agency may

continue to process the request, and the court (if suit has been filed) will supervise the agency's

ongoing progress, ensuring that the agency continues to exercise due diligence in processing the

request.  In cases where expedited processing has been granted, it follows that the district court's

supervision will aim to ensure that the agency is processing a request with "due diligence" *and* as

quickly "as practicable.").

Plaintiff is likely to succeed on the merits because it has established that it is entitled to the production of records responsive to its request "as soon as practicable."  Plaintiff has established an urgent need to obtain the requested information that will both "help guide on-the-ground efforts that will directly impact detained immigrants" and "likely influence public discourse around ICE's handling" of the global pandemic.  *See* Mem. in Supp. of Mot. 13 [ECF No. 6-1].  Despite FOIA's statutory mandate that agencies process expedited requests "as soon as practicable," Defendants initially failed to provide even an estimated timeline for processing and production, arguing that "the FOIA Litigation team is working at capacity and cannot commit to processing records for new litigation cases until it completes processing for several other cases, and begins processing records for the cases that predate the instant litigation."  Holzer Decl. ¶ 24.[5]

Plaintiff's request concerns a serious and time-sensitive matter, and it is entitled to an order requiring Defendants to process and produce responsive documents on a more expeditious timeline than that proposed by Defendants.  *See Center for Public Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5 (D.D.C. 2019) (granting preliminary injunction and ordering production of records related to impeachment inquiry within one month based on finding that "the requested documents are sought in order to inform the public on a matter of extreme national concern" and records were sought "to inform an imminent public debate"); *American*

---

[5]       During the June 2, 2020 hearing, Defendants stated that they could commit to processing 250 pages per month, with monthly productions to Plaintiff beginning on July 31, 2020.  On June 9, 2020, the Court ordered the parties to "meet and confer in an effort to narrow or prioritize Plaintiff's priorities among the FOIA requests at issue in this case, and to discuss a possible agreement on a timeline for processing and production of records."  Minute Order (June 9, 2020).  During the June 11, 2020 hearing, the parties informed the Court that they had been unable to reach an agreement as to a timeline for processing and production of records – Defendants committed to processing 300 pages per month, with monthly productions to Plaintiff beginning on July 31; Plaintiff requested processing of 400 pages per month with monthly productions beginning in mid-July.

*Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 187 (D.D.C. 2019) (granting in part plaintiff's motion for preliminary injunction and ordering production of communications related to impeachment inquiry within approximately one month); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) (granting preliminary injunction and ordering production within one month where records concerned the presidential administration's policy of conducting surveillance of domestic communications without prior authorization and congressional hearings were ongoing); *Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) (granting preliminary injunction where records concerned White House visitor logs and midterm elections were occurring shortly; ordering production within 10 days of court order).

For these reasons, the Court concludes that Plaintiff has established a likelihood of success on the merits.

**II.    Plaintiff Has Shown that It is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief.**

"Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Chief among them is that "the injury must be both certain and great; it must be actual and not theoretical." *Id.*  District courts in this circuit have recognized that, where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate.  *See Wash. Post*, 459 F. Supp. 2d at 75 ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Elec. Privacy Info.*

*Ctr.*, 416 F. Supp. 2d at 41 (finding that plaintiff would be irreparably harmed because it would be "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program").

Plaintiff argues that it will suffer irreparable harm in the absence of preliminary relief because "delay in the release of information will interfere with Plaintiff's efforts to inform and impact a rapidly evolving discussion of national consequence involving a governmental agency – the manner in which ICE is safeguarding the rights of individuals held in immigration detention facilities during a deadly pandemic." Mem. in Supp. of Mot. at 14. Plaintiff "intends to widely disseminate the records obtained in this FOIA request to influence public action and contribute to the ongoing conversation over the adequacy of ICE's response to the COVID-19 pandemic." *Id.* at 16; *see also* Reply at 9 ("Plaintiff anticipates that the information it seeks . . . will have a consequential impact on efforts to seek release of vulnerable individuals in ICE custody, as well as provide real-time accountability regarding screening, treatment and housing of individuals who remained detained."). Plaintiff seeks the requested information to inform the public about ICE's response to the COVID-19 pandemic and the impact of that response on the thousands of immigrant detainees who are presently in ICE custody. A delay in the release of the requested information would cause irreparable harm.

Defendants attempt to downplay the urgency of Plaintiff's request, asserting that Plaintiff "cannot point to any concrete deadline by which it needs the records" because "[t]he COVID-19 pandemic continues." Opp'n at 16. But the fact that the COVID-19 pandemic is an ongoing public health crisis only bolsters Plaintiff's claim of irreparable harm. *See Center for Public Integrity*, 411 F. Supp. 3d at 13 ("[T]he lack of a precise end-date for the impeachment

proceedings is not detrimental to Plaintiff's claim of irreparable harm."). Accordingly, the Court finds that Plaintiff has shown irreparable harm absent a preliminary injunction.

**III.     The Balance of Equities and the Public Interest Weigh in Plaintiff's Favor.**

The final two factors that the Court must consider are the balance of equities and the public's interest in the issuance of an injunction. *See Arkansas Dairy Co-op Ass'n, Inc. v. U.S. Dep't of Agric.,* 573 F.3d 815, 821 (D.C. Cir. 2009). When "balanc[ing] the competing claims of injury," the Court must "consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 555 U.S. at 24 (citations omitted). Additionally, "courts of equity should [have] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (internal quotation marks and citations omitted).

Defendants argue that granting an injunction here would "disadvantage other, similarly situated organizations or members of the public who have FOIA requests pending before DHS (some of which also may be viewed as urgent by the requestors) that have been granted expedited processing or are in litigation." Opp'n at 17. Defendants also state that granting Plaintiff's "request for an infeasible and extraordinary processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with the FOIA exemptions." *Id.* at 18. Plaintiff counters that "[o]ther FOIA requesters [ ] will not be harmed by a preliminary injunction that adheres to the FOIA processing scheme already in place" because its request for expedited treatment has already been granted. Mem. in Supp. of Mot. at 17-18.

The Court finds that requiring Defendants to process and produce documents responsive to Plaintiff's request at the rate of 400 pages per month beginning on July 31, 2020 is a minimal burden. As noted above, ICE identified approximately 800 pages of potentially responsive

records, so Defendants' processing and production should be completed by the end of August
2020.  Additionally, Plaintiff has only requested non-exempt information, so Defendants will not
be required to create a *Vaughn* index or provide declarations in support of withholdings at this
time.  The Court appreciates that Defendants' employees are facing unexpected challenges due to
the COVID-19 pandemic and associated closures and telework arrangements, and for that reason,
the Court found that Plaintiff's initial request that the Court order Defendants to process and
produce all non-exempt, responsive records within 30 days was not reasonable.  The alternate
timeline imposed by the Court should place minimal hardship on Defendants.

The Court also finds that the public interest favors issuing a preliminary injunction.  The
public's interest in obtaining the requested non-exempt records outweighs any possible harm to
other requesters that may result from accelerated processing of this request.  *See American
Oversight*, 414 F. Supp. 3d at 187 (where information sought could "directly inform" the public
debate and investigation related to the presidential impeachment inquiry, "[t]he public's interest
in disclosure of responsive, non-exempt records is [ ] high and outweighs any harm to other
FOIA requesters that might result from a temporary diversion of the State Department's FOIA
resources to accelerate processing of this request.'); *Wash. Post*, 459 F. Supp. at 76 ("pursuant to
the statutory provision mandating expedited treatment, the public's interest in expedited
processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out
processing of FOIA requests.").

The balance of the equities and the public interest weigh in favor of granting a
preliminary injunction.

## **<u>CONCLUSION</u>**

For the foregoing reasons, as well as the reasons stated on the record during the June 11, 2020 hearing, the Court granted Plaintiff's Motion for Preliminary Injunction and directed Defendants to process Plaintiff's request in accordance with the timeline set forth in its June 11, 2020 Order.

July 6, 2020

_____
Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE